UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

EDUARD GLADYSHEV,

Plaintiff,

-against-

EXPERIAN INFORMATION SOLUTIONS, INC. and NAVY FEDERAL CREDIT UNION,

Defendants.

MEMORANDUM & ORDER

No. 1:23-cv-1405 (ENV) (PK)

VITALIANO, D.J.

Plaintiff Eduard Gladyshev brought this action on January 17, 2023, seeking damages under the Fair Credit Reporting Act ("FCRA") as the result of mistaken information appearing on his credit report. Gladyshev named Experian Information Solutions, Inc. ("Experian"), a consumer reporting agency, and Navy Federal Credit Union ("Navy Federal"), a national credit union, as defendants; Navy Federal is the only remaining defendant in this action and it moves for summary judgment under Fed. R. Civ. P. 56 and also moves to strike a declaration filed by Gladyshev in opposition to the summary judgment motion. *See* Def.'s Mot., Dkt. 44; Mot. to Strike, Dkt. 47. For the reasons that follow, Navy Federal's motion for summary judgment is granted in part and denied in part, and the motion to strike is granted.

## Background[1]

In August 2021, a spurious Navy Federal membership and credit card account were established in Gladyshev's name as the result of identity theft. Pl.'s Response to Navy Federal's Stmt. of Mat. Facts, Dkt. 45 ("Pl.'s SOMF"), ¶ 2. The unknown thief used Gladyshev's name,

[1] The facts are drawn from the Rule 56.1 Statements, *see* Dkts. 44-2, 45, 46-1, as well as the admissible evidence submitted on the record, and are undisputed unless noted otherwise.

Social Security number, date of birth, and address to apply for a credit card. *Id.* ¶¶ 3–4. Subsequently, on or about November 24, 2021, Gladyshev discovered that this fraudulent credit card account was reporting with a balance of greater than $20,000 to credit reporting agencies ("CRAs"). *Id.* ¶ 5. Gladyshev then disputed the account with the three major CRAs: Experian, Equifax Inc. ("Equifax"), and TransUnion LLC ("TransUnion"). *Id.* ¶ 6.

When a consumer initiates a dispute with a CRA regarding an account, the CRA submits the information provided by the consumer to the furnisher[2] of the disputed information via an Automated Credit Dispute Verification Form ("ACDV"). *Id.* ¶ 7. In line with the standard procedure, after Gladyshev disputed the fraudulent account with the three major agencies, each one sent an ACDV regarding the account to Navy Federal in November, triggering its internal investigation process. *Id.* ¶¶ 19–20, 27. When Navy Federal receives ACDVs with dispute codes indicating that the account does not belong to the consumer, its internal investigators first determine whether the consumer's listed information—name, Social Security number, date of birth, and the like—is consistent with its internal records. *Id.* ¶ 23. If the information is accurate, Navy Federal responds to the ACDV with a code that tells the CRA only that the information on the disputed account matches the information logged in Navy Federal's system. *Id.* ¶ 24.

But the review is not one-size-fits-all. If the dispute is sent to Navy Federal with codes indicating "identity theft" or "fraud," or if the ACDV indicates otherwise that the consumer is claiming identity theft, Navy Federal conducts a more searching review in which the investigator also reviews payment history on the account, any affidavits submitted by the consumer, the

[2] "Furnishers include banks, card issuers, and other financial institutions that transmit information relating to debts owed by consumers to CRAs for reporting." *Brooks v. Higher Educ. Loan Auth. of the State of Missouri (Mohela)*, No. 1:25-CV-00844 (BKS) (PJE), 2026 WL 161196, at *2 (N.D.N.Y. Jan. 21, 2026) (citation omitted). Navy Federal is a furnisher within the meaning of FCRA. Pl.'s SOMF ¶ 1.

member's alert history in Navy Federal's system, and other such information. *Id.* ¶¶ 25, 31. If this review raises an inference of fraud, the case is then sent to Navy Federal's security team for a determination whether to confirm or deny fraud. *Id.* ¶ 32. One of the three ACDVs were marked as "identity theft," two were marked indicating that the account did not belong to the consumer, and all three contained notes indicating that Gladyshev claimed the account was fraudulent. *Id.* ¶¶ 19–21, Paulson Decl., Dkt. 44-4, Exs. 2–4.[3]

It seems clear from this record that Navy Federal carried out this process for each of the three November ACDVs. Pl.'s SOMF ¶¶ 26, 34. Because the fraudster had used Gladyshev's real name, date of birth, and Social Security Number to open the credit card, this information matched the legitimate information in Navy Federal's system. *Id.* ¶ 35. However, the ACDVs contained suspicious traces: for instance, the address on the fraudulent credit card did not match Gladyshev's address in the Navy Federal system and had been changed the day the account was opened, the phone number didn't match, there was no mortgage or employment listed, and the email address was unusual. *Id.* ¶ 35; Navy Federal's Reply Stmt. of Facts ("Reply SOMF") ¶ 5; Lopez Decl., Dkt. 43-1, Ex. 3; Rahman Decl., Dkt. 43-13, Ex. G, Ex. L ("Dep. of William Mosely") at 19:8–20:13. Moreover, the identity thief himself had called Navy Federal on various occasions, and because Gladyshev had also called Navy Federal several times, Navy Federal was by this point in possession of recorded calls from individuals with different voices and phone numbers who both claimed to be Gladyshev. Reply SOMF ¶ 22. On the other hand, and surely weighing against a finding of identity fraud, a payment had been made on the fraudulent card from Gladyshev's own account. Pl.'s SOMF ¶ 39; Rahman Decl., Dkt. 43-13, Ex. G. Considering this information, Navy

---

[3] Citations to pages of the parties' briefing refer to the Electronic Case Filing system ("ECF") pagination, except that citations to a deposition reference the internal document's pagination.

Federal's investigators did not submit the case to the security team to make a determination of fraud, and provided responses to all three CRAs on December 8, 2021, with a code indicating simply that the personal information on the fraudulent account was accurate. Pl.'s SOMF ¶ 40.

Another round of four ACDVs regarding the fraudulent account followed, in December 2021, from Equifax and Experian. *Id.* ¶¶ 41, 43–44, 46. These differed from the first mainly in that Gladyshev had also attached an identity theft report he had filed with the FTC, as well as an NYPD police report and a dispute letter to Equifax. *Id.* ¶¶ 45–46. Despite having received these supporting documents, Navy Federal reviewed each of the ACDVs according to the process detailed above and, again, responded with codes indicating that the account information was accurate without forwarding the case to the security team for fraud review. *Id.* ¶¶ 47–49.

The security team was finally made aware of the fraud claim in December 2021, due to a notification not from Navy Federal's internal investigators, but from Experian itself.[4] *Id.* ¶¶ 50–52. Notwithstanding, the security review, which took place in January 2022, failed to detect the fraud and concluded that Gladyshev himself was responsible for the fraudulent account, citing that the account statements reflected payments on the fraudulent card from a Navy Federal account in Gladyshev's name, the same device used to make those payments to the account had accessed the membership in Gladyshev's name, and the personal information on the account matched Gladyshev's. *Id.* ¶ 52, Paulson Decl. Ex. 10; Lopez Decl. Ex. 5, Dkt. 43-3, Pl.'s SOMF ¶ 66. As a result of these findings, Navy Federal communicated to the CRAs—incorrectly—that Gladyshev

---

[4] The security team had originally been notified of Gladyshev's claim of identity fraud back in November when he first disputed it; Gladyshev called Navy Federal to report fraud on the same day he discovered the account, and Navy Federal flagged his account for potential identity theft and submitted it for the security team's review on the same date. Reply SOMF ¶¶ 15–17. However, there is no record evidence that the Navy Federal security team actually investigated the account for fraud until January.

was responsible for the fraudulent account and that the account should be reinserted onto his credit report. Pl.'s SOMF ¶ 53; Paulson Decl. Ex. 10.

Meanwhile, in January 2022, Navy Federal received yet more ACDVs: eight in total, all from Equifax, and all indicating an identity theft dispute. *Id.* ¶ 62. These ACDVs included a variety of additional information that Gladyshev had sent to Equifax in his attempt to get the fraudulent account taken down, including his passport, the FTC and NYPD complaints, his Social Security card, and his driver's license. *Id.* ¶¶ 54–55. Each were reviewed via the standard process, and for each, Navy Federal responded to Equifax with the code indicating simply that the account information was accurate. *Id.* ¶ 63.

After Gladyshev's fraud claim was denied by the security team, he filed an appeal with Navy Federal. Reply SOMF ¶ 30. That appeal, finally, was successful, and in February 2022, Navy Federal determined that Gladyshev was in fact a victim of identity theft and the account was fraudulent. Pl.'s SOMF ¶ 68. Navy Federal then directed that the account be deleted from Gladyshev's credit report. *Id.* ¶¶ 68–69. Gladyshev seeks a variety of damages arising from this episode: for hypertension caused or exacerbated by Navy Federal's alleged conduct, for emotional distress, for the loss of opportunities for financing, and for assorted out-of-pocket costs associated with fixing the fraudulent report. *Id.* ¶¶ 70–75.

Gladyshev brought this claim against Experian and Navy Federal on January 17, 2023. *See* Compl., Dkt. 1-2. The parties stipulated to dismiss the action with prejudice as to Experian only on December 21, 2023. *See* Dkt. 27. Thus, in the operative complaint, the remaining claims are against Navy Federal only for violation of FCRA. Am. Compl., Dkt. 8, at ¶¶ 28–31. Navy Federal moved for summary judgment in full on August 6, 2024. Dkt. 44.

## Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "[T]he trial court's task at the summary judgment motion stage . . . is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." *Demand Elec., Inc. v. Innovative Tech. Holdings, LLC*, 665 F. Supp. 3d 498, 503 (S.D.N.Y. 2023) (quoting *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994) (alterations in original)). "[A] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of the City of N.Y.*, 746 F.3d 538, 544 (2d Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). A dispute over material facts is "genuine" where "a reasonable jury could return a verdict for the nonmoving party" based on the evidence cited. *Anderson*, 477 U.S. at 248.

Assertions of fact made in connection with a motion for summary judgment must be supported by citations "to particular parts of materials in the record" that could be presented as admissible in evidence, which may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); *see also Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 57 (2d Cir. 2012). "Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 33 (2d

Cir. 1997).

## Discussion

I. Summary Judgment

FCRA "imposes several duties on those who furnish information to consumer reporting agencies." *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 150 (2d Cir. 2012); *see also* 15 U.S.C. § 1681s–2. "In essence, these obligations involve the duty to provide accurate information and to correct inaccurate information, 15 U.S.C. § 1681s–2(a), and to conduct an investigation after receiving notice of a credit dispute from a consumer reporting agency, § 1681s–2(b)." *Nguyen v. Ridgewood Sav. Bank*, 66 F. Supp. 3d 299, 303 (E.D.N.Y. 2014); *see also Longman*, 702 F.3d at 150. § 1681s–2(b) of FCRA provides a civil cause of action against a furnisher based on their provision of disputed information to credit reporting agencies. *Comunale v. Home Depot, U.S.A., Inc.*, 328 F. Supp. 3d 70, 80 (W.D.N.Y. 2018). To prevail on a claim under § 1681s–2(b), Gladyshev must establish that "(1) the furnisher received notice of a credit dispute from a credit reporting agency, and (2) the furnisher thereafter acted in willful or negligent noncompliance with the statute." *Rubin v. HSBC Bank USA, NA*, 717 F. Supp. 3d 266, 269 (E.D.N.Y. 2024) (citation and internal quotation marks omitted). "The elements of a negligence claim under the FCRA are (1) inaccuracy, (2) failure to follow reasonable procedures, (3) actual damages, and (4) causation. A willfulness claim has the additional element of a knowing or reckless failure to follow reasonable procedures." *Mader v. Experian Info. Sols., LLC*, No. 19 CIV. 3787 (LGS), 2020 WL 264396, at *2 (S.D.N.Y. Jan. 17, 2020) (cleaned up). Gladyshev has asserted claims under both willfulness and negligence theories.

Considering first his negligence claim, a furnisher fails to follow reasonable procedures by failing to carry out its statutory duty to investigate disputed information; although the Second Circuit has not yet decided the "specific contours" of the furnisher's duty to investigate a disputed

report, "courts within and outside the Second Circuit have assumed an objective reasonableness standard for judging the adequacy of the required investigation." *Rubin*, 717 F. Supp. at 271 (citation and internal quotation marks omitted); *see also Okocha v. HSBC Bank USA, N.A.*, 700 F. Supp. 2d 369, 374 (S.D.N.Y. 2010). The "central inquiry when assessing a consumer's claim under § 1681s–2(b) is whether the furnisher's procedures were reasonable in light of what is learned about the nature of the dispute from the description in the CRA's notice of dispute." *Jenkins v. AmeriCredit Fin. Servs., Inc.*, No. 14CV5687SJFAKT, 2017 WL 1325369, at *6 (E.D.N.Y. Feb. 14, 2017). "Generally, the question of reasonableness in FCRA cases presents a fact question for the jury." *Rubin*, 717 F. Supp. at 271; *see also Gorman v. Experian Info. Sols., Inc.*, No. 07 CV 1846 (RPP), 2008 WL 4934047, at *4 (S.D.N.Y. Nov. 19, 2008) (reasonableness under FCRA "will be a jury question in the overwhelming majority of cases") (citation and internal quotation marks omitted).

This case sits comfortably within the heartland of cases advancing an FCRA negligence theory that survive summary motion practice; drawing all inferences in his favor, as is required at this stage, Gladyshev has put forth sufficient evidence for a jury to conclude that Navy Federal's investigation of his dispute was unreasonable. Navy Federal's security team was provided with information that could reasonably raise suspicion of identity fraud, from the phone calls from two different voices who both claimed to be Gladyshev, to an incorrect address which was changed on the date the account was opened, to account logins from 35 different IP addresses. Reply SOMF ¶ 26. Nonetheless, the Navy Federal security team got Gladyshev's case wrong in the first instance until it was overturned on appeal, and Navy Federal's first-line reviewers considered fifteen notices from CRAs regarding the account before finding in Gladyshev's favor. There may also be jury questions regarding, for instance, why the security team did not begin to investigate fraud

until late December even though Gladyshev had submitted NYPD and FTC reports before then, and even though Navy Federal documents indicate that the case was referred to its security team as soon as Gladyshev first discovered the fraud in November. Nor is it the case that the court can conclude as a matter of law that, even had Navy Federal conducted a reasonable investigation, its result would have been no different, which would be fatal to Gladyshev's case. *Suluki v. Credit One Bank, NA*, 138 F.4th 709, 720 (2d Cir. 2025). Reasonableness is "context-dependent," *see id.*, and normally reserved for the fact-finder: so too here.

Success on an FRCA claim sounding in a negligence theory, of course, requires more than the showing of a statutory violation—there must be a concrete injury. Indeed, while a victim "may recover actual, statutory, and punitive damages for a willful violation of the FCRA," a victim advancing a negligence theory "may recover only actual damages." *Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229, 239 (S.D.N.Y. 2014); *see* 15 U.S.C. § 1681n(a)(1), 1681o(a)(1). To recover actual damages a plaintiff must establish a "causal relation between the violation of the statute and the loss of credit, or other harm." *Burns v. Bank of Am.*, 655 F. Supp. 2d 240, 250 (S.D.N.Y. 2008) (internal quotations and citation omitted). In other words, plaintiff "must establish actual damages attributable to defendants' unreasonable investigation." *Okocha*, 2010 WL 5122614, at *5. Notably, though, actual damages under FCRA can also include recovery for "a denial of credit, as well as humiliation and mental distress, even in the absence of out-of-pocket expenses." *Haynes v. TransUnion, LLC*, No. CV197157JSARL, 2021 WL 2179346, at *6 (E.D.N.Y. Feb. 4, 2021) (internal quotations and citation omitted).

Several of the categories of damages Gladyshev claims are not recoverable. For instance, although Gladyshev seeks "loss of opportunity" damages because he refrained from applying for financing for the duration of this episode, these damages are too speculative. *See Casella v.*

*Equifax Credit Info. Servs.*, 56 F.3d 469, 475 (2d Cir. 1995). It is an undisputed fact that Gladyshev was never actually denied credit due to any information reported by Navy Federal, nor did he incur any change to the terms or conditions of any credit account or loan as a result of the fraudulent account or Navy Federal's report. Pl.'s SOMF ¶¶ 80–81. Gladyshev, in other words, asserts essentially that he was damaged because he was deterred from applying for credit in the first place, but he has identified no specific opportunity to obtain credit or financing which he might have pursued—much less one that he actually did pursue—if not for Navy Federal's failed investigation, nor has he shown he would have been denied if he did. Therefore, Gladyshev's claimed "lost opportunity" damages are unrecoverable as a matter of law. *Frederick v. Cap. One Bank (USA), N.A.*, No. 14-CV-5460 (AJN), 2018 WL 1583289, at *11 (S.D.N.Y. Mar. 27, 2018). On this claim of damages, Navy Federal is entitled to judgment.

Another item of Gladyshev's damages claims meets a similar fate. He seeks damages related to hypertension that he claims was caused or exacerbated by Navy Federal's conduct. Pl.'s SOMF ¶ 70. According to Gladyshev, he has preexisting hypertension, takes blood pressure medication regularly, and before December 2021, had an average reading of 135 over 90. Gladyshev Decl., Dkt. 45-2, ¶ 40. Gladyshev claims that his blood pressure levels were elevated from December 2021 until February 2022, which he traces to the stress caused by Navy Federal's handling of his case. *Id.* However, although Gladyshev visited a primary care physician for hypertension in January 2022, *see* Lopez Decl. Ex. 10, Dkt. 43-7, his hypertension had been logged in medical records as early as January 2018, and there is no record evidence from a physician that it worsened during the relevant time period. *See id.*; Pl.'s SOMF ¶ 87. Nor did Gladyshev maintain a log of his blood pressure readings during the period in question. *Id.* ¶ 86. Without evidence that Navy Federal caused or exacerbated Gladyshev's hypertension, no reasonable juror could award

him damages on that basis. *See Jackling v. HSBC Bank USA, N.A.*, No. 15-CV-6148-FPG, 2019 WL 162743, at *9 (W.D.N.Y. Jan. 10, 2019).

As noted earlier, a showing that a FCRA violation is willful opens a broader spectrum of available damages claims. To establish a willful violation of FCRA, a plaintiff must "show that the defendant knowingly and intentionally committed an act in conscious disregard for the rights of others" or "intentionally misled consumers or concealed information from them." *Owoyemi v. Credit Corp Sols. Inc.*, 677 F. Supp. 3d 285, 300 (S.D.N.Y. 2023) (cleaned up). Furnishers may willfully violate FCRA by, for instance, intentionally failing to correct information that they know to be false or outright refusing to consider new information. *See Frederick*, 2018 WL 1583289, at *10; *Rubin*, 717 F. Supp. at 272, *Jones v. Experian Info. Sols., Inc.*, 982 F. Supp. 2d 268, 275 (S.D.N.Y. 2013).

This is the driest of holes. There is no evidence in the record that Navy Federal knowingly violated FCRA or took unjustifiably high risks with Gladyshev's account. Although its security team incorrectly determined that his account was not fraudulent, Navy Federal has put forth evidence that it did so based on good-faith—if wrongheaded—conclusions because, for instance, payments had been made on the credit card from Gladyshev's own account. "The mere failure to correct a plaintiff's inaccurate credit information, even after notification of the inaccuracy, does not constitute a willful failure to comply with the FCRA." *George v. Equifax Mortg. Servs.*, No. 06-CV-971, 2010 WL 3937308, at *2 (E.D.N.Y. Oct. 5, 2010). Moreover, Gladyshev's claim that Navy Federal failed to investigate the identity theft *at all* is simply not true. Put differently, although a reasonable juror could conclude that Navy Federal acted negligently by failing to follow reasonable procedures, no reasonable juror could conclude that Navy Federal willfully violated FCRA. Therefore, both punitive and statutory damages are unavailable as a matter of law. *See*

*Ritchie*, 14 F. Supp. at 239.

But the bucket of available damages is still not exhausted. Even in the absence of a showing of willfulness, damages for emotional injury caused by a violation of FRCA remain available. The emotional injury, moreover, need not be hinged to a tangible adverse effect. In other words, "freestanding" emotional injuries that allegedly flow from the mere inaccuracy of the credit report are cognizable and may be recovered as a result of an FCRA violation. *Shimon v. Equifax Info. Servs. LLC*, 431 F. Supp. 3d 115, 123 (E.D.N.Y. 2020), *aff'd*, 994 F.3d 88 (2d Cir. 2021). Various "factors may bear on whether a claim of emotional injury is sufficiently demonstrable to reach a jury—including whether there is corroborative testimony or other objective evidence, *e.g.*, medical records; whether plaintiff's testimony is conclusory or detailed; whether plaintiff's asserted distress was short-lived or long-lasting; and whether the emotional distress is linked to a credit denial or similarly adverse event." *Wenning v. On-Site Manager, Inc.*, No. 14 CIV. 9693 (PAE), 2016 WL 3538379, at *20 (S.D.N.Y. June 22, 2016).[5]

The bridge to the recovery of emotional damages resulting from FCRA violations remains open, but is not especially sturdy. Some courts in this circuit have refused to allow submission of this theory to a jury when a plaintiff did not produce medical records concerning the claimed emotional damage—or even when they did. *See Caltabiano v. BSB Bank & Tr. Co.*, 387 F. Supp.

---

[5] It is well-established law in this circuit that a plaintiff cannot win pain and suffering damages under FCRA without a showing "that any potential creditor or other person in appellant's community learned of any harmful information." *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 475 (2d Cir. 1995); *see also Trikas v. Universal Card Servs. Corp.*, 351 F. Supp. 2d 37, 45 (E.D.N.Y. 2005). However, this rule does not bar Gladyshev's claim, because it is undisputed that at least one potential creditor—TD Bank—did access Gladyshev's credit report during the period in which the fraudulent account was listed. *See* Lopez Reply Decl., Dkt. 48, Ex. 1 at 11. Drawing all inferences in Gladyshev's favor, the Court finds that other creditors may have as well, as financial institutions like Capital One and HSBC Bank appear also to have accessed the credit report during the pendency of the investigation. *Id.* at 10.

2d 135, 142 (E.D.N.Y. 2005); *Neclerio v. Trans Union*, LLC, 983 F. Supp. 2d 199, 215 (D. Conn. 2013). Others have viewed a plaintiff's own testimony as sufficient. *See Wenning*, 2016 WL 3538379, at *20 (noting split in authority); *McMillan v. Experian*, 170 F. Supp. 2d 278, 287 (D. Conn. 2001); *see also Podell v. Citicorp Diners Club, Inc.*, 914 F. Supp. 1025, 1037 (S.D.N.Y. 1996), *aff'd*, 112 F.3d 98 (2d Cir. 1997). The better view, the Court finds, is rooted in the understanding that there is "no statutory basis to categorically require third-party corroboration to permit a claim for emotional damages to reach the jury," though "a plaintiff's emotional injury claim is more likely to survive summary judgment where it is detailed, objective, and corroborated." *Wenning*, 2016 WL 3538379, at *20; *see also Patrolmen's Benevolent Ass'n. of City of New York v. City of New York*, 310 F.3d 43, 55 (2d Cir. 2002).

Gladyshev has not produced admissible corroborative testimony or medical records to support pain and suffering damages. *See infra* Section II. However, Gladyshev claims that he experienced stress, anxiety, and frustration as a result of the investigation. Pl.'s SOMF ¶ 71. According to Gladyshev, this manifested in loss of sleep, difficulty concentrating, exhaustion, headaches, and difficulties in his relationships with his wife, children, and coworkers. Gladyshev Decl., Dkt. 45-2, ¶¶ 36–44. Gladyshev claims that he feared financial difficulties as a result of the false report and subsequent investigation, as well as false accusations. *Id.* ¶ 37. In light of Gladyshev's declaration and anticipated testimony, he has proffered sufficient evidence for a reasonable juror to conclude that he suffered emotional damages as a result of the Navy Federal episode. Such damages may prove in the end to be "modest," but they are damages nonetheless, and under FCRA, they are cognizable. *See Podell*, 914 F. Supp. at 1037. Also recoverable, to the extent they can be proven, are Gladyshev's out-of-pocket expenses related to the episode, including postage, credit monitoring services, gas, and parking. *See Shimon*, 431 F. Supp. at 123;

Pl.'s SOMF ¶ 73. On all other asserted theories of damage, summary judgment in favor of Navy Federal is proper.[6]

II. Motion to Strike

All that remains for decision are the litigation skirmishes. To be read in connection with the motion for summary judgment, Gladyshev submitted the Declaration of Silviya Shteynberg, his common-law wife, who testifies that Gladyshev was "aggravated and stressed" and "irritated with everything" during the Navy Federal saga. *See* Shteynberg Decl., Dkt. 45-4, ¶¶ 1, 4, 7. The declaration was executed on July 16, 2024, or approximately two weeks before the summary judgment papers were filed. *Id.* Gladyshev failed to disclose Shteynberg as an "individual with relevant knowledge who plaintiff may rely upon to support his claims" during the discovery period, which violated Fed. R. Civ. P. 26. *See* Rahman Decl., Dkt. 52-1, ¶ 2. Thus, defendant's counsel never had the opportunity to depose Shteynberg. Navy Federal has moved to strike Shteynberg's

[6] Navy Federal argues that they cannot be held liable for any damages within the deadline that FCRA imposes on furnishers to investigate a credit dispute. Under this theory, FCRA should be interpreted to essentially create a safe harbor period for furnishers from the time their duty to investigate a credit dispute arises—*i.e.*, when they receive notice of the dispute from a CRA—to the end of the statutory period the furnisher has to complete the investigation. *See* 15 U.S.C. § 1681s–2(b)(2). The Court is unpersuaded that this reading of FCRA is correct for three reasons. First, Navy Federal supports this argument by citing to a line of cases in Florida district courts, but no Second Circuit precedent supports this reading of FCRA, and some appear to contradict it. *See Jenkins*, 2017 WL 1325369, at *7 (noting it was undisputed that defendant "responded to each of the ACDV forms within thirty days as required under the FCRA," but that questions of fact still existed regarding whether its investigation was reasonable). Second, this interpretation is not rooted in the text or structure of FCRA, which makes no reference to a limitation on liability for furnishers during the investigation period. *See* 15 U.S.C. § 1681s–2(b)(2). Indeed, the deadline provision is phrased as a requirement imposed on the furnisher, not as a safe harbor. *Id.* FCRA contains several explicit safe harbor provisions; presumably, had Congress wished to limit liability during the investigations period as well, it would have done so. *See* 15 U.S.C. § 1681s–2(c) (limitation on liability provision); § 1681s–2(a)(7)(F) (safe harbor provision). And third, there is no inherent reason that a furnisher could not cause damages prior to the statutory deadline through an unreasonable investigation, whether via credit denials, emotional damages, or other cognizable harms that may take place during that period.

declaration in its entirety. Mot. to Strike, Dkt. 47.

Navy Federal's motion is somewhat constrained by its nomenclature rather than its merit. In brief, only "admissible" evidence can be considered on a motion for summary judgment, "the Rule 56 standard makes a motion to strike obsolete in the summary judgment context." *Hooks v. Forman Holt Eliades & Ravin LLC*, No. 11 CIV. 2767 LAP, 2015 WL 5333513, at *3 (S.D.N.Y. Sept. 14, 2015); *see also* Fed. R. Civ. P. 56(c). In other words, Navy Federal's request need not be styled as a motion to strike, as opposed to a standard objection under Rule 56 that the Shteynberg declaration is inadmissible. *See Faulkner v. Arista Records LLC*, 797 F. Supp. 2d 299, 305 (S.D.N.Y. 2011). In that context, the Court agrees: the Shteynberg declaration is inadmissible for failure to comply with Gladyshev's discovery obligations.

Under Federal Rule of Civil Procedure 37(c)(1), a party that fails to "identify a witness as required by Rule 26(a)" is prohibited from using that "witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). When determining whether to exclude testimony under this rule, a district court must weigh four factors: (1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witness, (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony, and (4) the possibility of a continuance. *See Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006). A showing of bad faith by the party who failed to disclose the evidence is not required to exclude the evidence, though bad faith can be "taken into account as part of the party's explanation for its failure to comply." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006).

The Court does not find that any bad faith is apparent on the part of Gladyshev's counsel, who represents that the failure to include Shteynberg was "an error and there was no intention to

take the Defendant by surprise." Opp. to Mot. to Strike, Dkt. 52, at 2. Nonetheless, the purpose of the Shteynberg declaration appears to be exactly what Rule 37(c)(1) is meant to prevent: "the practice of sandbagging an adversary with new evidence." *Erazo v. SCM Grp. N. Am.*, No. 16-cv-2386 (RRM) (RER), 2019 WL 1044365, at *17 (E.D.N.Y. Mar. 5, 2019) (internal quotations and citation omitted). The inference is irresistible that, having realized during summary judgment briefing that third-party corroboration would strengthen the claim for emotional damages, plaintiff's counsel submitted the Shteynberg declaration to shore that claim up. The failure to disclose Shteynberg cannot be called "harmless" given the credence her testimony could lend to Gladyshev's claim in the eyes of a jury, and the Court finds that, given the time that has elapsed since the close of discovery in April 2024, granting a continuance would prejudice the defendant. *See* Dkt. 36, Joint Certification Regarding Close of Discovery (Apr. 26, 2024). As a matter of fairness, Rule 37 requires the exclusion of her declaration, which is inadmissible and was not considered on this motion.

## Conclusion

For the foregoing reasons, the motion for summary judgment filed by defendant is granted in part and denied in part. As a result, this case will proceed to trial solely on the negligence theory of recovery, with damages limited to actual damages as set out above. The motion to strike filed by defendant is granted.

The case is referred to Magistrate Judge Peggy Kuo to manage the final preparations for trial.

So Ordered.

Dated: Brooklyn, New York
October 28, 2026

/s/ Eric N. Vitaliano

ERIC N. VITALIANO
United States District Judge